PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
ZACHARY FAIGEN (SBN 294716)
zachary.faigen@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2000 Avenue of the Stars, Suite 200N
Los Angeles, California 90067
Telephone: (213) 687-5000

MICHAEL W. McTIGUE JR. (admitted *pro hac vice*)
michael.mctigue@skadden.com
MEREDITH C. SLAWE (of counsel)
meredith.slawe@skadden.com
SHAUD G. TAVAKOLI (of counsel)
shaud.tavakoli@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Facsimile: (212) 735-2000

*Attorneys for Defendants*
UNIQLO USA LLC and Fast Retailing USA, Inc.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| AMY TRINH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>UNIQLO USA LLC and FAST RETAILING USA, INC.,<br><br>Defendants. | CASE NO.: 2:26-cv-04712-GW-RAO<br><br>**DEFENDANTS' REPLY IN FURTHER SUPPORT OF MOTION TO TRANSFER**<br><br>Date: October 5, 2026<br>Time: 8:30 a.m.<br>Judge: Hon. George H. Wu<br>Courtroom: 9D |

# TABLE OF CONTENTS


I. INTRODUCTION ........ 1

II. ARGUMENT ........ 2

A. The Court Should Transfer the Action Before Addressing Defendants' Motion to Dismiss ........ 2

B. The Court Should Transfer Pursuant to the Forum-Selection Clause ........ 2

1. Plaintiff Agreed to the Terms ........ 2

2. The Forum-Selection Clause Applies to Plaintiff's Claims ........ 5

3. Plaintiff Concedes That the Forum Selection Clause is Valid ........ 7

4. Fast Retailing May Invoke the Terms ........ 7

5. The Public Interest Factors Do Not Prevent Transfer ........ 8

C. The Court Should Alternatively Transfer Pursuant to the Traditional Section 1404 Factors ........ 9

1. Plaintiff's Choice of Forum Is Entitled to Minimal Weight ........ 9

2. Party Convenience Favors Transfer ........ 11

3. Witness Convenience Favors Transfer ........ 11

4. The Interests of Justice Favor Transfer ........ 12

III. CONCLUSION ........ 14

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Aleisa v. Gojo Industries, Inc.*,
No. 2:20-cv-01045-AB-AGR,
2020 WL 6826475 (C.D. Cal. Oct. 19, 2020) ........ 11

*Alfia v. Coinbase Global, Inc.*,
No. 21-cv-08689-HSG,
2022 WL 3205036 (N.D. Cal. July 22, 2022) ........ 6

*Aniel v. GMAC Mortgage, LLC*,
No. C 12–04201 SBA,
2012 WL 5373388 (N.D. Cal. Oct. 30, 2012) ........ 4

*Barton v. Procter & Gamble Co.*,
No. 3:24-CV-01332-GPC-SBC,
2025 WL 3558932 (S.D. Cal. Dec. 11, 2025) ........ 9

*Berk v. Coinbase, Inc.*,
840 F. App'x 914 (9th Cir. 2020) ........ 6

*Berman v. Freedom Financial Network, LLC*,
30 F.4th 849 (9th Cir. 2022) ........ 3

*Brooks v. Warnermedia Direct LLC*,
No. CV 23-7579-GW-MRWx,
2023 WL 10706636 (C.D. Cal. Dec. 1, 2023),
*adopted*, 2023 WL 10705852 (C.D. Cal. Dec. 4, 2023) ........ 2

*Burgess v. HP, Inc.*,
No. 16-CV-04784-LHK,
2017 WL 467845 (N.D. Cal. Feb. 3, 2017) ........ 13

*Chamndany v. Harding*,
No. 8:22-cv-00243-FWS-DFM,
2022 WL 19263348 (C.D. Cal. Oct. 4, 2022) ........ 7, 13

*Decker Coal Co. v. Commonwealth Edison Co.*,
805 F.2d 834 (9th Cir. 1986) ........ 12

*Fedoroff v. Rocket Mortgage, LLC*,
No. 26-cv-00702-JSC,
2026 WL 1707021 (N.D. Cal. June 12, 2026) .......... 3, 4

*In re Ferrero Litigation*.,
768 F. Supp. 2d 1074 (S.D. Cal. 2011) .......... 13

*Garcia v. Roc Nation LLC*,
No. 2:24-cv-04448-HDV-SSC,
2024 WL 4766199 (C.D. Cal. Oct. 4, 2024) .......... 8

*Getz v. Boeing Co.*,
547 F. Supp. 2d 1080 (N.D. Cal. 2008) .......... 13

*Giron v. Hong Kong*,
No. 2:15–cv–08869–ODW(JC),
2017 WL 5495504 (C.D. Cal. Nov. 15, 2017) .......... 4

*Goff v. Nationwide Mutual Insurance Co.*,
No. CV 17-7358 PSG (AFMx),
2018 WL 6003578 (C.D. Cal. Apr. 5, 2018) .......... 13

*Greben v. Cinmar, LLC*,
No. 2:24-cv-10140-MRA-BFM,
2025 WL 1765916 (C.D. Cal. May 30, 2025) .......... 9, 10, 12, 13

*Harbor Pipe & Steel, Inc. v. Mazak Optonics Corp.*,
No. 5:22-cv-01775-SSS-SPx,
2023 WL 12173431 (C.D. Cal. Mar. 29, 2023) .......... 5, 6

*Hawkins v. Gerber Products Co.*,
924 F. Supp. 2d 1208 (S.D. Cal. Feb. 20, 2013) .......... 14

*Holland America Line Inc. v. Wärtsilä North America, Inc.*,
485 F.3d 450 (9th Cir. 2007) .......... 7

*Hong v. StubHub, Inc.*,
No. 2:24-cv-03318-SB-JC,
2024 WL 4720924 (C.D. Cal. Sep. 9, 2024) .......... 4

*Jackson v. Amazon.com, Inc.*,
65 F.4th 1093 (9th Cir. 2023) .......... 4

*Jovel v. i-Health, Inc.*,
No. 12–05526 DDP (JCGx),
2012 WL 5470057 (C.D. Cal. Nov. 8, 2012) .......... 10

*Keebaugh v. Warner Bros. Entertainment Inc.*,
100 F.4th 1005 (9th Cir. 2024) .......... 3

*Kranitz v. BTL Industries, Inc.*,
No. 8:25-cv-01587-DOC-JDE,
2026 WL 1196371 (C.D. Cal. Apr. 28, 2026) .......... 8

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
858 F.2d 509 (9th Cir. 1988) .......... 7

*Media Matters for America v. X Corp.*,
No. 25-cv-02397-VC,
2025 WL 1853767 (N.D. Cal. July 3, 2025) .......... 7, 8

*Meza v. Procter & Gamble Co.*,
No. EDCV 23-91 JGB (SHKx),
2023 WL 3267861 (C.D. Cal. Apr. 27, 2023) .......... 10, 14

*Mina v. Red Robin International, Inc.*,
No. CV 18-9472 PSG (GJSx),
2020 WL 4037163 (C.D. Cal. Mar. 3, 2020) .......... 11

*Montenegro v. Johnson & Johnson Consumer, Inc.*,
No. 2:24-CV-01895-SB-BFM,
2024 WL 4720925 (C.D. Cal. Sep. 16, 2024) .......... 11

*Moreno v. Johnson & Johnson Consumer Inc.*,
No. 2:21-cv-02666-AB-PVC,
2021 WL 12302429 (C.D. Cal. Oct. 5, 2021) .......... 12

*Moretti v. Hertz Corp.*,
No. C 13–02972 JSW,
2014 WL 1410432 (N.D. Cal. Apr. 11, 2014) .......... 7

*Nail v. Lens.com, Inc.*,
No. 2:24-cv-02531-SB-E,
2024 WL 3723912 (C.D. Cal. Jun. 20, 2024) .......... 4, 5

*Oberstein v. Live Nation Entertainment, Inc.*,
60 F.4th 505 (9th Cir. 2023) .... 5

*Park v. Dole Fresh Vegetables, Inc.*,
964 F. Supp. 2d 1088 (N.D. Cal. 2013) .... 13, 14

*Patrick v. Running Warehouse, LLC*,
93 F.4th 468 (9th Cir. 2024) .... 3

*PennyMac Loan Services, LLC v. Black Knight, Inc.*,
No. 2:19-cv-09526-RGK-JEM,
2020 WL 5985492 (C.D. Cal. Feb. 13, 2020) .... 2

*Pizarro v. QuinStreet, Inc.*,
No. 22-cv-02803-MMC,
2022 WL 3357838 (N.D. Cal. Aug. 15, 2022) .... 4

*R.A. v. Epic Games, Inc.*,
No. CV 19-1488-GW-Ex,
2019 WL 6792801 (C.D. Cal. July 30, 2019) .... 10, 11

*Risch v. Kalshiex LLC*,
No. 2:26-cv-02390-SB-MAA,
2026 WL 1708888 (C.D. Cal. June 3, 2026) .... 12

*Sadlock v. Walt Disney Co.*,
No. 22-cv-09155-EMC,
2023 WL 4869245 (N.D. Cal. July 31, 2023) .... 4, 5

*Sarhadi v. Pear Health Labs, Inc.*,
No. 24-cv-07921-TLT,
2025 WL 1350033 (N.D. Cal. Apr. 18, 2025) .... 5

*Scribner v. Trans Union LLC*,
738 F. Supp. 3d 1301 (E.D. Cal. 2024) .... 4

*Sellers v. JustAnswer LLC*,
73 Cal. App. 5th 444 (2021) .... 3

*Slaten v. Dick's Sporting Goods, Inc.*,
Nos. 2:23-cv-04861-WLH-MAA et seq.,
2024 WL 1136399 (C.D. Cal. Feb. 2, 2024) .... 2, 3, 4

*Socialcom, Inc. v. Arch Insurance Co.*, No. 2:20-cv-04056-RGK-AGR, 2020 WL 6815039 (C.D. Cal. July 7, 2020) .......... 8

*Stock v. Xerox Corp.*, No. SACV-15-01747-MWF (KES), 2016 WL 5867436 (C.D. Cal. Apr. 13, 2016) .......... 11, 12

*Uy v. Pacific Life Insurance Co.*, No. SACV 23-01854-CJC (ADSx), 2023 WL 12224070 (C.D. Cal. Dec. 12, 2023) .......... 5

*Wallace v. International Paper Co.*, No. SACV 20-00242JVS(DFMx), 2020 WL 4938361 (C.D. Cal. July 2, 2020) .......... 2

*Walters v. Famous Transports, Inc.*, 488 F. Supp. 3d 930 (N.D. Cal. 2020) .......... 11

*Whalen v. NBA Properties, Inc.*, No. 25-cv-01030-CRB, 2025 WL 1948591 (N.D. Cal. July 16, 2025) .......... 5

*Yamashita v. LG Chem, Ltd.*, 62 F.4th 496 (9th Cir. 2023) .......... 3

**STATUTES**

28 U.S.C. § 1404 .......... 1

## I. INTRODUCTION[1]

This action should be transferred to SDNY for two independent reasons:

***First***, Plaintiff agreed to a binding New York forum-selection clause when she signed up for an account on the UNIQLO website. Plaintiff argues that the notice was not reasonably conspicuous but that is wrong: the Terms were prominently referenced on her account sign-up page and on the page she used to log in thereafter. Plaintiff alternatively argues that the Terms do not cover this action but that is also wrong: her claims based on pricing representations plainly "arise under" the Terms. While Plaintiff contends that one defendant, Fast Retailing USA, Inc. ("Fast Retailing"), is not a party to the Terms, that is irrelevant. Courts routinely transfer claims against both a party and a non-party where (i) the claims against the defendants are closely related, (ii) the non-party is a third-party beneficiary of the agreement, **or** (iii) it would be in the interest of judicial economy to transfer the entire case rather than just a portion of it. All three standards apply here.

***Second***, the traditional 28 U.S.C. § 1404 factors all favor a transfer to SDNY. Plaintiff insists her choice of forum deserves "meaningful weight" because she is a California resident who allegedly suffered injury here. Yet the sole case on which she relies involved only a *California* class, not, like here, a nationwide class—undermining her own argument. Plaintiff does not and cannot dispute that the evidence, and virtually every witness aside from Plaintiff (who is just one individual among a putative nationwide class of UNIQLO consumers) is located in New York.

Accordingly, this action should be transferred to SDNY.

---

[1] All emphases are added and internal citations, quotations, and alterations are omitted unless otherwise indicated. Capitalized terms are defined in Defendants' opening brief ("Mot.," ECF 13), unless defined herein. Plaintiff's opposition (ECF 25) is referred to herein as "Opposition" or "Opp'n."

## II. ARGUMENT

### A. The Court Should Transfer the Action Before Addressing Defendants' Motion to Dismiss

As explained in the Motion, the Court should transfer this action before addressing the motion to dismiss as a matter of judicial efficiency. (Mot. 5-6.) Plaintiff contends the Court is not required to decide this Motion first but that misses the point: it would be a waste of the Court's resources to wade into the merits if the action will be transferred to another court. (*Id.* 5-6.) For that reason, courts routinely decide motions to transfer before case dispositive motions. *See Wallace v. Int'l Paper Co.*, No. SACV 20-00242JVS(DFMx), 2020 WL 4938361, at *7 (C.D. Cal. July 2, 2020) (transferring pursuant to forum-selection clause and denying motions to dismiss as moot); *PennyMac Loan Servs., LLC v. Black Knight, Inc.*, No. 2:19-cv-09526-RGK-JEM, 2020 WL 5985492, at *7 (C.D. Cal. Feb. 13, 2020) (same); *Brooks v. Warnermedia Direct LLC*, No. CV 23-7579-GW-MRWx, 2023 WL 10706636, at *6 (C.D. Cal. Dec. 1, 2023) (transferring pursuant to forum-selection clause and declining to decide motion to compel arbitration) (Wu, J.), *adopted*, 2023 WL 10705852 (C.D. Cal. Dec. 4, 2023). Plaintiff cites no contrary authority.

### B. The Court Should Transfer Pursuant to the Forum-Selection Clause

#### 1. Plaintiff Agreed to the Terms

Plaintiff concedes she created an account on Uniqlo.com but argues that she was not provided reasonably conspicuous notice of the Terms. Plaintiff is wrong. Notice is sufficiently conspicuous where, as here, an underlined link to the terms is provided directly above the action button to complete the account creation process. (Mot. 7; ECF 13-1, Tomohiro Decl. ¶¶ 5-10 (describing hyperlink and providing screenshot showing underlined hyperlinks));[2] *see Slaten v. Dick's Sporting Goods, Inc.*, No. 2:23-cv-04861-WLH-MAA,

[2] Plaintiff argues that Defendants' evidence is insufficient because the screenshot of the signup page provided in the Tomohori Declaration post-dates the June 2019 creation of

2024 WL 1136399, at *4 (C.D. Cal. Feb. 2, 2024) (hyperlink was directly above and in "close proximity" to action button); *Fedoroff v. Rocket Mortg., LLC*, No. 26-cv-00702-JSC, 2026 WL 1707021, at *6 (notice appeared "*above* the [action] button, meaning it is within the user's primary area focus and is in visual proximity to the request for consent").

Plaintiff contends an underlined hyperlink does not give consumers reasonably conspicuous notice. (Opp'n 6.) But the cases on which she relies do not support her sweeping argument and are inapposite. In those cases, the hyperlinks were set in fine print that was barely visible compared to the rest of the text. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 856-57 (9th Cir. 2022) (hyperlink was "printed in a tiny gray font considerably smaller than the font used in the surrounding website elements . . . a font so small that it is barely legible to the naked eye"); *Sellers v. JustAnswer LLC*, 73 Cal. App. 5th 444, 480-81 (2021) (hyperlink "appear[ed] in extremely small print" "in relation to the other text on the screen"). The Ninth Circuit has since clarified that its holding in *Berman* is limited to similar circumstances involving "barely legible" fonts, and that links that appear legible on an uncluttered page are sufficient to provide reasonable notice. *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 477 (9th Cir. 2024) (distinguishing *Berman* and upholding "clear and legible" link that was "not hidden or obscured"); *see also Keebaugh v. Warner Bros. Ent. Inc.*, 100 F.4th 1005, 1020-21 (9th Cir. 2024) (similar).

Here, the link to the Terms was provided in the same size as the rest of the body text, offset in its own section, and accompanied by a capitalized heading, "TERMS + CONDITIONS." (Tomohiro Decl. ¶ 6.) Courts consistently hold that similar notices are sufficiently conspicuous. *See Patrick*, 93 F.4th at 477; *Keebaugh*, 100 F.4th at 1020-21; *see also Fedoroff*, 2026 WL 1707021, at *6 (notice sufficient where link was in "virtually the

---

her account. (Opp'n 7.) But the Tomohori Declaration provides that screenshot for "exemplary purposes" and confirms that users have been required to accept the Terms consistent with this practice since "before 2019 and through to the present." (Tomohori Decl. ¶¶ 5-10.) Plaintiff has not put forth any evidence to the contrary. *See Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 502 (9th Cir. 2023); *Fedoroff*, 2026 WL 1707021, at *4.

same font size as the preceding text fields"); *Nail v. Lens.com, Inc.*, No. 2:24-cv-02531-SB-E, 2024 WL 3723912, at *3 (C.D. Cal. Jun. 20, 2024) (notice sufficient where link was presented "in black font against a white background" and underlined next to action button); *Slaten*, 2024 WL 1136399, at *4 (similar); *Pizarro v. QuinStreet, Inc.*, No. 22-cv-02803-MMC, 2022 WL 3357838, at *3 (N.D. Cal. Aug. 15, 2022) (similar).

Alternatively, Plaintiff challenges Defendants' evidentiary proffer on the purported grounds that "UNIQLO does not produce the underlying records." (Opp'n 7.) But a declarant need not produce underlying records and may testify to their personal knowledge based on a review of those records. *See Giron v. Hong Kong*, No. 2:15–cv–08869–ODW(JC), 2017 WL 5495504, at *6 (C.D. Cal. Nov. 15, 2017) ("[A] declarant may review business records to establish personal knowledge of a particular issue."); *Aniel v. GMAC Mortg., LLC*, No. C 12–04201 SBA, 2012 WL 5373388, at *6 (N.D. Cal. Oct. 30, 2012) (similar); *Scribner v. Trans Union LLC*, 738 F. Supp. 3d 1301, 1305-06 (E.D. Cal. 2024) (declarant had personal knowledge of online enrollment process based on his position and review of internal records). Plaintiff does not, as she must, offer any evidence refuting Defendants' factual proffer. *See Fedoroff*, 2026 WL 1707021, at *4 (enforcing forum-selection clause and granting transfer motion where plaintiff "does not offer any evidence contradicting [defendant's] testimony or [his] screenshot").

*Jackson v. Amazon.com, Inc.*, 65 F.4th 1093 (9th Cir. 2023) (cited at Opp'n 7), does not help Plaintiff. There the defendant did not provide any evidence showing the details of the notice provided to the consumer. *Id.* at 1100. Here, in contrast, Defendants provided not only a description of the sign-up page but also a screenshot showing what it looked like. *See Hong v. StubHub, Inc.*, No. 2:24-cv-03318-SB-JC, 2024 WL 4720924, at *5 (C.D. Cal. Sep. 9, 2024) (distinguishing *Jackson* where "[t]he facts here are starkly different: [d]efendant has provided not only a detailed description of the website and its relevant features but also a screenshot showing what it looked like"); *see also Sadlock v. Walt Disney Co.*, No. 22-cv-09155-EMC, 2023 WL 4869245, at *12 n.8 (N.D. Cal. July 31, 2023) ("in *Jackson*, the

defendant failed to provide information about the content of the email that was sent").

Lastly, Plaintiff ignores her ongoing relationship with Uniqlo.com, reinforcing the conclusion that she had notice of and assented to the Terms. Specifically, she continued to log into her account after creating it and in each case was presented with a link to the Terms below the login button. (Mot. 7; Tomohiro Decl. ¶¶ 11-24.) Courts hold that a plaintiff's "ongoing relationship" with a website further supports the conspicuousness of a notice of terms. *See Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 517 (9th Cir. 2023) (requiring users to complete "a full registration process" indicated "'some sort of continuing relationship' that would have put users on notice for a link to the terms of that continuing relationship"); *Whalen v. NBA Props., Inc.*, No. 25-cv-01030-CRB, 2025 WL 1948591, at *4 (N.D. Cal. July 16, 2025) (that plaintiffs created accounts, provided their credit card information, and downloaded mobile app were "all indicative of an ongoing relationship that should have put Plaintiffs on alert for contractual terms"); *Sarhadi v. Pear Health Labs, Inc.*, No. 24-cv-07921-TLT, 2025 WL 1350033, at *6 (N.D. Cal. Apr. 18, 2025) ("the context of the transaction support[ed] reasonably conspicuous notice" where plaintiff created an account and his "interaction with the App was more than a one-time purchase or transaction"); *Nail*, 2024 WL 3723912, at *4 (similar).

**2. The Forum-Selection Clause Applies to Plaintiff's Claims**

Plaintiff argues that the forum-selection clause does not apply because it governs only claims "arising under" the Terms and thus relates only to the performance of the contract. But an agreement governing claims "arising under" a contract is "not limited to breach of contract claims." *Uy v. Pac. Life Ins. Co.*, No. SACV 23-01854-CJC (ADSx), 2023 WL 12224070, at *3 (C.D. Cal. Dec. 12, 2023). For example, claims about representations made before a purchase or the performance of a product after a purchase both relate to the contract and thus "arise under" it. *Harbor Pipe & Steel, Inc. v. Mazak Optonics Corp.*, No. 5:22-cv-01775-SSS-SPx, 2023 WL 12173431, at *2 (C.D. Cal. Mar. 29, 2023).

Moreover, when it comes to the terms of service that govern the use of a website,

courts hold that disputes "arising under" such terms enjoys a "broad" scope. *Alfia v. Coinbase Glob., Inc.*, No. 21-cv-08689-HSG, 2022 WL 3205036, at *3 (N.D. Cal. July 22, 2022). For example, in *Alfia*, the court held that because the Coinbase user agreement "concern[ed] the provision of Coinbase services through a Coinbase account," disputes "arising under" that agreement included all "claims relate[d] to Defendant's provision of Coinbase services through [plaintiff's] Coinbase account." *Id.* That included all the plaintiff's claims for breach of contract, negligence, and misrepresentations. *Id.* at *1, *3; *see also Berk v. Coinbase, Inc.*, 840 F. App'x 914, 915-16 (9th Cir. 2020) (negligence claim "arose under" Coinbase user agreement).

Here, the Terms govern Plaintiff's "access to" Uniqlo.com (Ex. A at 1), and it was through that "access" that Plaintiff completed purchases that form the backbone of her claims. (Mot. 8.) Indeed, purchasing merchandise is the primary purpose of having an account on Uniqlo.com—the online store of a clothing retailer. Moreover, Plaintiff's claims are expressly based on the prices of products she purchased and allegations that Defendants "deceived" her by "[o]mitting material facts" about pricing. (Compl. ¶¶ 57-58.) As her claims rest on "representations made . . . prior to [her] purchase[s]," they relate to the "performance of the contract" and thus "arise under" it. *Harbor Pipe*, 2023 WL 12173431, at *2. If there were any doubt that pricing disputes "arise under" the Terms, the Terms also specifically disclaim any warranties as to "price descriptions." (Mot. 8; Exs. A at 2; Ex. B at 7.)

Lastly, Plaintiff also argues that the Terms do not apply because she does not allege online purchases. (Opp'n 10.) But she does not dispute that she in fact made purchases on Uniqlo.com during the class period. (*See* Tomohiro Decl. ¶ 17; Compl. ¶ 37.) Those transactions are encompassed by the Complaint. Indeed, Plaintiff asserts claims on behalf of herself and a putative class covering all individuals "who purchased, **through any UNIQLO retail channel**, any good subject to the IEEPA-based tariffs, during the period between February 1, 2025 and February 24, 2026." (Compl. ¶ 37.)

**3. Plaintiff Concedes That the Forum Selection Clause is Valid**

Plaintiff does not show this case involves any of the three "unusual" circumstances that would render the forum-selection clause invalid—i.e., that it (i) is the product of fraud or overreaching, (ii) contravenes a strong public policy, or (iii) would deprive her of her day in court. (Mot. 8-10.) As such, Plaintiff concedes any argument that the forum-selection clause is invalid. *See Chamndany v. Harding*, No. 8:22-cv-00243-FWS-DFM, 2022 WL 19263348, at *15 (C.D. Cal. Oct. 4, 2022) (failure to respond waives point).

**4. Fast Retailing May Invoke the Terms**

Plaintiff argues that Defendant Fast Retailing cannot move to transfer because it is not a party to the Terms. This argument cannot defeat transfer for several independent reasons:

***First***, non-parties can invoke a forum-selection clause where, as here, "the alleged conduct of the non-parties is closely related to the contractual relationship" between the parties. *Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 456 (9th Cir. 2007) (explaining that "a range of transaction participants, parties and non-parties, should benefit from and be subject to forum selection clauses"); *see also Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 514 (9th Cir. 1988) (cited at Opp.'n 11) (same). Plaintiff concedes that the alleged conduct of Fast Retailing is closely related to the contractual relationship between her and UNIQLO USA LLC by conflating the two Defendants in virtually every allegation of the Complaint. (Compl. p.1 (defining "UNIQLO" and "Defendant" to refer to both Defendants); *see id.* ¶¶ 1-7, 8, 11-18, 24-32, 34-38, 41-42, 44, 48, 50-61, 63-71, 73-75, 77-79.)

***Second***, Fast Retailing is entitled to invoke the Terms as a third-party beneficiary. "A third-party qualifies as a beneficiary under a contract if the parties intended to benefit the third party and the terms of the contract make that intent evident." *Moretti v. Hertz Corp.*, No. C 13–02972 JSW, 2014 WL 1410432, at *3 (N.D. Cal. Apr. 11, 2014). "That intent is found where the terms of the contract necessarily require the promisor to confer a benefit on a third person." *Media Matters for Am. v. X Corp.*, No. 25-cv-02397-VC, 2025 WL 1853767,

at *2 (N.D. Cal. July 3, 2025). The Terms here expressly state that Plaintiff "agree[s] to indemnify UNIQLO ***and its Affiliates*** against all damages, liabilities, costs, charges and expenses, including reasonable attorneys' fees, that UNIQLO may incur as a result of . . . any claims brought against UNIQLO ***and/or its Affiliates*** relating to . . . actions taken by you." (Ex. A at 4); *see Socialcom, Inc. v. Arch Ins. Co.*, No. 2:20-cv-04056-RGK-AGR, 2020 WL 6815039, at *3 (C.D. Cal. July 7, 2020) (indemnified party was a third-party beneficiary subject to forum selection clause).

***Third***, where claims are brought against multiple defendants and there is a forum selection clause that governs claims against just one of them, the entire action should be transferred as a matter of judicial efficiency. *See Kranitz v. BTL Indus., Inc.*, No. 8:25-cv-01587-DOC-JDE, 2026 WL 1196371, at *2-3 (C.D. Cal. Apr. 28, 2026) (transferring entire action where forum selection clause applied to only one defendant; observing that court "has the power to subject non-signatories to the chosen forum" and explaining that "it would be a waste of judicial resources for these claims to be litigated in different forums across the country"); *see also Garcia v. Roc Nation LLC*, No. 2:24-cv-04448-HDV-SSC, 2024 WL 4766199, at *4 (C.D. Cal. Oct. 4, 2024) (transferring claims against nonsignatory because they "arise from the same set of facts, legal principles, parties, and counsel" and transfer "aligns with the interests of judicial efficiency because maintaining parallel proceedings in separate jurisdictions would result in unnecessary duplication of efforts, increased costs, and potential inconsistencies").

### 5. The Public Interest Factors Do Not Prevent Transfer

This is not, as Plaintiff contends, "the unusual case in which the public-interest factors warrant denying transfer." (Opp'n 19.) As explained in the Motion and further below, each of the public interest factors at issue weigh in favor of transferring to SDNY: the SDNY is less congested, New York has a strong local interest in this case, and the Terms include a New York choice of law provision. (Mot. 10-12; *infra* § II.C.4.)

### C. The Court Should Alternatively Transfer Pursuant to the Traditional Section 1404 Factors

The Motion shows the Court should also transfer this action to SDNY based on the convenience of the parties, convenience of the witnesses, and the interests of justice. (Mot. 13-21.) Plaintiff concedes the action could have been brought in New York but argues that the relevant factors weigh against transfer. (Opp'n 12.) Plaintiff is incorrect.

#### 1. Plaintiff's Choice of Forum Is Entitled to Minimal Weight

Plaintiff admits there is an avalanche of authority holding that a plaintiff's choice of forum is afforded minimal weight in a putative class action. (Mot. 17-19; Opp'n 13-14.) Plaintiff insists "[t]his case is different" because she "does not challenge a nationally uniform label or advertisement." (Opp'n 14.) Yet the Complaint refutes this argument: it alleges "Plaintiff and members of the Classes were injured by the same price increases." (Compl. ¶ 42; *see also id.* ¶¶ 15, 24-26, 41.)

The sole case Plaintiff cites to support the proposition that her choice of forum should be afforded more than minimal weight, *Barton v. Procter & Gamble Co.*, No. 3:24-CV-01332-GPC-SBC, 2025 WL 3558932 (S.D. Cal. Dec. 11, 2025), is plainly distinguishable. There, the plaintiff brought "a statewide, not nationwide, class action." *Id.* at *6. Here, Plaintiff asserts claims on behalf of a putative nationwide class. There is no reason to afford her choice of this forum deference.

Plaintiff argues that *Greben* is inapposite because there the court "found that the plaintiff did not have substantial contacts with the forum state because the misrepresentations stemmed from the defendant's headquarters." (Opp'n 14 (citing *Greben v. Cinmar, LLC*, No. 2:24-cv-10140-MRA-BFM, 2025 WL 1765916, at *4 (C.D. Cal. May 30, 2025)).) But that is precisely the case here: Plaintiff bases her claim on alleged misstatements, omissions, and conduct stemming from Defendants' headquarters. (Compl. ¶¶ 42 ("Plaintiff's claims therefore ***arise from the same practices or course of conduct*** that give rise to the claims of all members of the Classes."), 57 (Defendants made "representations, omissions, and/or

practices likely to deceive" consumers "regarding the nature, purpose, and disposition of the tariff-related price increases.").) As in *Greben*, Plaintiff's claims are asserted on behalf of a nationwide class that "purportedly suffered the exact same harm in seemingly every district across the nation." *Greben*, 2025 WL 1765916, at *4.

Plaintiff argues that the *Jovel* and *Meza* courts afforded minimal deference to the plaintiff's choice of forum because of forum-shopping concerns. (Opp'n 14.) But neither court relied on forum shopping alone. In *Jovel*, the court emphasized that plaintiff's role at trial "would not be nearly as significant as that of Defendant [and] its executives." *Jovel v. i-Health, Inc.*, No. CV 12–05526 DDP (JCGx), 2012 WL 5470057, at *3 (C.D. Cal. Nov. 8, 2012). So too here: the facts center on Defendants' conduct, while it is "not clear" what "Plaintiff would testify about beyond the fact of her purchase." *Id.* And the *Meza* court, beyond analyzing forum shopping concerns, reasoned that in a nationwide class action the court "defers even less to Plaintiff's chosen forum, since the decision to file suit here was at best the product of happenstance." *Meza v. Procter & Gamble Co.*, No. EDCV 23-91 JGB (SHKx), 2023 WL 3267861, at *6. Plaintiff's attempt to reduce these cases to their forum-shopping analysis fails.

Plaintiff's attempts to distinguish the remaining cases cited in the Motion turn on immaterial differences. She notes that *Epic Games* and *Mina* involved different causes of action than this case (false advertising and TCPA), *Aleisa* involved four additional named plaintiffs who resided outside of the district, and *Montenegro* involved parallel litigation. (Opp'n 14.) But Plaintiff never explains why those factual differences matter. Plaintiff does not contest that each case supports the same proposition: a plaintiff's choice of forum receives minimal weight when she seeks to represent a nationwide class and the operative facts center on the defendant's conduct outside the chosen forum.[3]

---

[3] *See R.A. v. Epic Games, Inc.*, No. CV 19-1488-GW-Ex, 2019 WL 6792801, at *8-9 (C.D. Cal. July 30, 2019) (still affording reduced deference in ***statewide*** class action because

**2. Party Convenience Favors Transfer**

The Motion explained that the convenience of the parties weighs in favor of transfer when the heart of the matter lies in the transferee district where the decisions relevant to the plaintiff's claims were made—here, New York. (Mot. 15.) Plaintiff never addresses the convenience of the parties, thus conceding this factor favors transfer.

**3. Witness Convenience Favors Transfer**

The Motion also explained that witness convenience, often considered the most important factor, favors transfer because virtually all witnesses will be in New York. (Mot. 15-17.) In response, Plaintiff argues that the factor is "neutral" because Defendants have only identified their employees as witnesses. (Opp'n 15-16.) But Plaintiff identifies *no* nonparty witnesses whose convenience would favor California. (Opp'n 15.) And the "burdens placed on a witness do not disappear because they happen to be employed by a party." *Walters v. Famous Transps., Inc.*, 488 F. Supp. 3d 930, 939 (N.D. Cal. 2020). Nor does Plaintiff address the uniform authority cited in the Motion holding that the role of a plaintiff at trial in a putative class action is minimal and thus does not defeat transfer. (Mot. 16 (citing cases).)

Plaintiff argues that transfer would merely "shift rather than eliminate the inconvenience." (Opp'n 16.) But the question is whether transfer "would result in an aggregate benefit to all." *Stock v. Xerox Corp.*, No. SACV-15-01747-MWF (KES), 2016

---

"plaintiff's claims concern misrepresentations," meaning "operative facts stem from where the statements were made"); *Aleisa v. Gojo Indus., Inc.*, No. 2:20-cv-01045-AB-AGR, 2020 WL 6826475, at *1-2 (C.D. Cal. Oct. 19, 2020) (minimal weight where "litigation occurs on a classwide basis" and defendant was "headquartered" in another state and claims "arise out of . . . conduct that originated and occurred in" another state); *Mina v. Red Robin Int'l, Inc.*, No. 18-9472 PSG (GJSx), 2020 WL 4037163, at *4 (C.D. Cal. Mar. 3, 2020) (providing "'minimal consideration' to a plaintiff's choice of forum in representative actions"); *Montenegro v. Johnson & Johnson Consumer, Inc.*, No. 2:24-CV-01895-SB-BFM, 2024 WL 4720925, at *4 (C.D. Cal. Sep. 16, 2024) (reducing deference because of "nationwide class" and because "the locus of the operative facts . . . [is] where the decisions about . . . marketing of the [products] were made").

WL 5867436, at *2 (C.D. Cal. Apr. 13, 2016). Here, as in *Moreno*, "the convenience of the single representative Plaintiff" does not outweigh the convenience of the other expected witnesses, who are concentrated in Defendants' New York headquarters. *Moreno v. Johnson & Johnson Consumer Inc.*, No. 2:21-cv-02666-AB-PVC, 2021 WL 12302429, at *2 (C.D. Cal. Oct. 5, 2021) (finding factor favors transfer); *see also Stock*, 2016 WL 5867436, at *2 (weighing convenience to all parties to determine convenience). *Decker Coal Co. v. Commonwealth Edison Co.,* 805 F.2d 834 (9th Cir. 1986) (cited at Opp'n 16), involving a contract dispute between two corporations, is clearly distinguishable. There, the court found that the key witnesses were divided between the two fora, with the liability witnesses concentrated in the transferee forum and the damages witnesses in the transferor forum. *Id.* at 843. Here, the witnesses as to all issues are overwhelmingly based in Defendants' New York headquarters, and Plaintiff identifies no California witness other than herself.

**4. The Interests of Justice Favor Transfer**

The Motion showed that each of the interests of justice factors favors transfer. (Mot. 17-21.) Plaintiff does not rebut this showing.

As to the local interest factors, Plaintiff acknowledges that "New York has some interest because UNIQLO is headquartered there and allegedly made relevant pricing decisions there." (Opp'n 17.) Plaintiff contends only that "California has a strong interest in protecting its consumers," but that logic applies to every state where consumers reside in this nationwide class action. It is New York that has a special, additional interest in "disputes involving resident corporations and allegedly wrongful conduct directed and carried out from New York." *Risch v. Kalshiex LLC*, No. 2:26-cv-02390-SB-MAA, 2026 WL 1708888, at *6 (C.D. Cal. June 3, 2026); *see also Greben*, 2025 WL 1765916, at *5 (local interest factors favored transfer because "all other states" have same interest in protecting residents, but only transferee forum "has the additional interest in ensuring that corporations that reside and are headquartered there do not engage in" unlawful conduct).

As to court congestion, Plaintiff does not dispute that there are more overall case

filings and more civil case filings in this District than in SDNY. (Opp'n 17.) Plaintiff focuses instead on the median time from filing to disposition or from filing to trial. (*Id.*) But filings per judgeship, not median time to disposition, is "the more relevant and revealing statistic." *Goff v. Nationwide Mut. Ins. Co.*, No. CV 17-7358 PSG (AFMx), 2018 WL 6003578, at *7 (C.D. Cal. Apr. 5, 2018). Regardless, court congestion is "only a 'minor factor' in the transfer analysis and this factor alone cannot control the overall balance" of the decision. *Burgess v. HP, Inc.*, No. 16-CV-04784-LHK, 2017 WL 467845, at *12 (N.D. Cal. Feb. 3, 2017).

As to familiarity with the governing law, the parties' agreement contains a New York choice-of-law provision, which favors transfer to New York. Even if California law were to apply to some claims, Plaintiff agrees that SDNY is fully capable of applying it. (Opp'n 18 ("[A] New York District Court could of course apply California law.").) Plaintiff's authorities do not address the contested choice-of-law issue: in *In re Ferrero Litigation*, 768 F. Supp. 2d 1074, 1081 (S.D. Cal. 2011), there was no dispute that California law governed all five of plaintiff's claims, and in *Getz v. Boeing Co.*, 547 F. Supp. 2d 1080, 1085 (N.D. Cal. 2008), the defendant did not address which state's substantive law should apply. (Opp'n 18.)

As to relative litigation costs, the Motion explains that costs are likely to be lower in New York because the witnesses and documentary evidence are centered there. (Mot. 20 n.6.) Plaintiff does not respond to this argument and thus concedes it. *See Chamndany*, 2022 WL 19263348, at *15.

Finally, as to the location of relevant documents, the Motion further explains that the overwhelming majority of evidence is in New York. (Mot. 5, 17.) Plaintiff again does not refute this showing. She asserts only that this factor receives "little weight in the transfer analysis" because documents will be exchanged electronically. (Opp'n 16.) But courts still afford this factor weight even in the age of electronic discovery because litigation costs may still be substantially lessened in "the district in which most of the documentary evidence is stored." *Greben*, 2025 WL 1765916, at *5 (quoting *Park v. Dole Fresh Vegetables, Inc.*, 964

F. Supp. 2d 1088, 1095 (N.D. Cal. 2013)); *see also Meza*, 2023 WL 3267861, at *9 (holding that factor still "slightly favor[s] transfer"). Indeed, Plaintiff's own cited authority explained that, as here, "most of the evidence in this litigation will be derived from [the defendant's] corporate records," and "much of the documentary evidence in this case . . . is likely located" at the defendant's headquarters, meaning this factor "slightly favors transferring the action." *Hawkins v. Gerber Prods. Co.*, 924 F. Supp. 2d 1208, 1216 (S.D. Cal. Feb. 20, 2013).

## III. CONCLUSION

The Court should transfer this action to the United States District Court for the Southern District of New York.

DATED: September 21, 2026

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

/s/ *Peter B. Morrison*
PETER B. MORRISON
*Attorneys for Defendants UNIQLO USA, LLC and Fast Retailing USA, Inc.*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants UNIQLO USA LLC and Fast Retailing USA, Inc., certifies that this brief contains 4,716 words, which complies with the word limit of L.R. 11-6.1.

DATED: September 21, 2026

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

/s/ *Peter B. Morrison*
PETER B. MORRISON
*Attorneys for Defendants UNIQLO USA, LLC and Fast Retailing USA, Inc.*